UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TIMOTHY HAYS, as the personal representative of the Estate of Brandon Lee Hays,** } } } } | |
| Plaintiff, } } | Case No.: 2:16-cv-00384-RDP |
| v. } } | |
| **CHRIS CURRY, et al.,** } } | |
| Defendants. } | |

## **MEMORANDUM OPINION**

### I.  Introduction

This case is before the court on two Motions to Dismiss filed by Defendants Chris Curry and Jay Fondren. (Docs. # 36, 37). The Motions are fully briefed. (Docs. # 43, 53). After careful consideration, and for the reasons stated below, the court concludes that the motions to dismiss are due to be granted because (1) Plaintiff has failed to state a claim for relief against Curry or Fondren in their individual capacities, and (2) Curry and Fondren are entitled to qualified immunity.

### II.  Procedural History

In his Second Amended Complaint, Plaintiff seeks relief for violations of Brandon Lee Hays's civil rights under 42 U.S.C. § 1983.[1] (Doc. # 33). Plaintiff claims that Curry, the former Sheriff of Shelby County, Alabama, and Fondren, the administrator of the Shelby County Jail,

---

[1] Plaintiff does not assert a claim for medical negligence or medical malpractice against Defendants Curry or Fondren. (*See* Doc. # 33 at ¶¶ 85-93).

violated Hays's Fourteenth Amendment rights by establishing unconstitutional customs and policies relating to medical care at the county jail. (*Id.* at ¶ 83).

Curry and Fondren each have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (Docs. # 36, 37). "A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996). Thus, for the purpose of resolving Defendants' motions, the court treats the following facts alleged in the Second Amended Complaint as true.

In February 2014, Brandon Lee Hays was sent to the Shelby County Jail when his bond was revoked due to a positive drug test. (Doc. # 33 at ¶¶ 14-15). Officers at the jail confiscated suboxone film from Hays at booking. (*Id.* at ¶ 16). Moreover, Hays informed jail personnel "that he had a history of serious withdrawal symptoms." (*Id.* at ¶ 18). Nevertheless, Brandon did not receive medication, treatment, or monitoring for his withdrawal symptoms. (*Id.* at ¶ 21).

Medical personnel at the jail provided Hays no medical treatment for severe withdrawal symptoms from February 27, 2014, until March 2, 2014, when he was taken to the jail's medical unit. (*Id.* at ¶¶ 34-37, 39). Officers transferred Hays to the medical unit after he suffered seizures and became non-responsive in his cell. (*Id.* at ¶ 39). On March 2, 2014, the nurses and correctional officers at the jail did not send Hays to a hospital, even though his condition worsened during the course of the day. (*Id.* at ¶¶ 40, 43-44, 53). Ultimately, Hays died on March 3, 2014. (*Id.* at ¶ 59).

---

[2] Defendants state that they preserve any statute of limitations defense permitted by law, but they present no argument for why Plaintiff's Section 1983 claim is barred by the applicable statute of limitations. (Docs. # 36 at 2, 37 at 2). Therefore, the court does not address whether Plaintiff's Section 1983 claims are barred by the applicable statute of limitations.

Plaintiff concedes that Curry and Fondren did not personally participate in Hays's medical care at the jail, and, in fact, he has sued a number of other Defendants alleging that they were the ones who personally participated in delaying or providing such care. (*See id.* at ¶ 61). This opinion does not address those claims. Rather, the court's opinion is limited to Plaintiff's claims that Curry and Fondren authorized and implemented several customs or policies that resulted in deliberate indifference towards inmates' medical needs. According to Plaintiff, these customs and policies include: (1) indifference towards "complications of opiate and benzodiazepine withdrawal"; (2) "delaying or denying necessary outside medical care in order to avoid liability for inmate medical bills"; and (3) "ignoring medical complaints of inmates who need medical attention for potentially serious conditions." (*See id.* at ¶¶ 24-28, 64, 67-68, 70-71). The Second Amended Complaint asserts that Curry and Fondren had notice of the jail's unconstitutional policy of delaying outside medical care for inmates from inmate complaints, communications by corrections officers, personal observations, common sense, inmate deaths, and lawsuits, and were aware of a widespread history of such abuses. (*Id.* at ¶¶ 70-71). In support of this contention, Plaintiff has pointed to five incidents over a ten year period: (1) the 2004 death of a jail inmate from a staph infection that was not treated for a week after an injury became infected; (2) a 2007 lawsuit against Curry by an inmate for denial of dental care; (3) a 2011 lawsuit against Curry by an inmate for denying medication and leg braces; (4) the 2011 death of another inmate, Rebecca Lynn Allred, and the lack of care she received before being transported to a hospital by Defendant Diana Shirley; and (5) a 2013 lawsuit against Curry by an inmate who claimed that he did not receive prescription medication when he could not pay a fee to visit a jail nurse. (*Id.* at ¶¶ 69, 72).

**III.     Standard of Review**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. International Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. Appx. 136,

4

138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed.³ *Twombly*, 550 U.S. at 570.

## IV.     Analysis

To state a claim under Section 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (citations omitted). In addition, Alabama sheriffs are state officials, and, thus, clothed with the authority of state law. *See Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citing *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987)) (a court must "consider the laws of the state" and, according to the Supreme Court of Alabama, "a sheriff is an executive officer of the state of Alabama").

Plaintiff argues that his Section 1983 claims against Defendants Curry and Fondren are based on their liability as supervisors for their subordinates' actions. (*See* Doc. # 43 at 2). It is well-settled that a plaintiff must meet an "extremely rigorous" standard in order to plead a

---

³ The court recognizes that the heightened pleading standard formerly applied by the Eleventh Circuit to Section 1983 cases where a defendant could assert qualified immunity no longer applies after *Iqbal*. *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).

Section 1983 claim against a supervisor in his individual capacity. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Indeed, it is axiomatic that supervisors are not responsible for unconstitutional acts by their subordinates on the basis of *respondeat superior* liability or vicarious liability. *Id.* Rather, a supervisor is only liable under Section 1983 in an individual capacity if he or she personally participated in unconstitutional conduct or "when there is a causal connection" between his or her actions and an alleged constitutional deprivation. *Id.* "A causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,' . . . or when the supervisor's improper 'custom or policy resulted in deliberate indifference to constitutional rights.'"[4] *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citation and ellipsis omitted).

### A.  The Second Amended Complaint Does Not Plausibly Allege that a History of Widespread Abuse Occurred at the Shelby County Jail

On these pleadings, Plaintiff has fallen far short of stating a claim that Curry or Fondren were deliberately indifferent to Hays's medical needs based *solely* on notice of similar claims of deliberate indifference by other inmates. Plaintiff relies on an Eleventh Circuit case to show that he has properly alleged a widespread pattern of abuse: *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). However, a review of *Danley* reveals that Plaintiff's allegations do not meet the threshold for asserting a plausible claim that Curry or Fondren had sufficient knowledge of a history of widespread abuse.

---

[4] Plaintiff does not argue that Defendants Curry or Fondren are subject to supervisory liability for directing their subordinates to act unlawfully or knowing that they would act unlawfully and failing to stop them. (Doc. # 43 at 2).

In *Danley*, the plaintiff, Kevin Danley, claimed that a jail administrator and a sheriff were subject to supervisory liability for their subordinates' unconstitutional use of pepper spray because they had received notice that the subordinates previously had used excessive force against inmates with pepper spray and had provided insufficient care for pepper spray injuries. 540 F.3d at 1313. In particular, Danley's complaint alleged that the supervisors had received notice of their subordinates' unconstitutional conduct with pepper spray through (1) force reports, (2) complaints by inmates, attorneys, jailers, and judicial officers, and (3) personal observations. *Id.* at 1315. Moreover, the supervisors had received notice of several incidents involving pepper spray during the shift on which the supervisors' subordinates (and codefendants) worked. *Id.* The Eleventh Circuit held that Danley had sufficiently alleged the supervisors' notice of "obvious, flagrant, rampant, and [ ] continued" misconduct because they had received numerous complaints about their subordinates' excessive use of pepper spray and subsequent denial of appropriate treatment. *Id.* It emphasized that Danley had alleged complaints regarding such conduct "during the shift on which [the subordinate codefendants] worked." *Id.* Because the supervisors allegedly failed to respond to this notice and the misconduct continued, the Eleventh Circuit concluded that Danley had put forth adequate allegations of supervisory liability. *Id.*

In contrast, Plaintiff's Second Amended Complaint falls short of plausibly alleging that Defendants Curry and/or Fondren were aware of a widespread history of specific unconstitutional conduct by their subordinates. This is the case for at least three reasons. First, Plaintiff has not alleged that Curry and Fondren were aware of a pattern of specific constitutional violations by their subordinates like the specific constitutional violations related to pepper spray presented in the *Danley* litigation. *Cf. Danley*, 540 F.3d at 1313. Rather, Plaintiff claims that

Curry and Fondren had notice of the jail's allegedly widespread practice of cost control taking precedence over providing necessary medical care, an allegation that is almost completely devoid of specifics beyond a bare allegation that Curry and Fondren knew of a practice that potentially had constitutional implications. (Doc. # 33 at ¶ 71). Second, Plaintiff has not alleged the specific facts, dates, frequency, or number of reports, complaints, and/or lawsuits that Curry and Fondren received (or became aware of) related to the alleged prior incidents. To the extent Plaintiff relies on five incidents over a ten year period (2004 to 2013) to show a widespread history of misconduct, he has not alleged enough prior incidents to support such an allegation of widespread practice.[5] *Cf. Connick v. Thompson*, 563 U.S. 51, 62-63 (2011) (holding that four reversals of convictions over a ten-year period for *Brady* violations were insufficient to place a district attorney on notice that his office's *Brady* training was inadequate). Finally, Plaintiff's Second Amended Complaint does not indicate whether the complaints received by Curry and Fondren related to unconstitutional conduct by the subordinates responsible for Hays's medical care. (*See* Doc. # 33 at ¶ 71). *See Danley*, 540 F.3d at 1315 (emphasizing that some complaints received by the supervisors related to the shift where the subordinate codefendants actually worked). For these reasons, Plaintiff has failed to plead a causal connection between any deprivation of Hays's constitutional rights and Curry's or Fondren's failure to respond to a widespread history of abuse.

---

[5] Notably, Plaintiff has not included details about when Defendants Curry and Fondren received inmate complaints or communications from corrections officers in the Second Amended Complaint, nor has he asserted when they observed cost control taking precedence over providing medical care at the jail in a deliberately indifferent manner.

### B. The Second Amended Complaint Fails to Adequately Plead Persistent and Widespread Practices Supporting a Policy or Custom or a Specific Similar Incident

Similarly, Plaintiff's Second Amended Complaint falls short of pleading an adequate causal connection between specific customs or policies implemented by Defendants Curry and Fondren and the harms suffered by Hays. "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir 1986). In a similar action against Defendant Curry, this court found that it could not "plausibly infer a '*consistent* and *widespread* practice' of denying medical treatment from three isolated incidents." *Bell v. Shelby Cnty., Ala.*, 2013 WL 5566269, at * 8 (N.D. Ala. Oct. 8, 2013) (unpublished) (quoting *Depew*, 787 F.2d at 1499, and adding emphasis). Plaintiff relies on *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227 (11th Cir. 2010), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010), to show that Curry and Fondren instituted unconstitutional customs or policies. But the factual assertions in the Second Amended Complaint filed in this case simply do not meet those provided in *Harper*.

> In *Harper*, the plaintiff alleged that the supervisors who managed a jail:
>
> had customs or policies of improperly screening inmates for alcohol withdrawal, improperly handling inmates addicted to alcohol or drugs, delaying medical treatment and restricting access to outside medical providers in order to save money, primarily using emergency medical treatment for physical injuries only, and also failing to train jailers in identifying inmates with alcohol dependency.

592 F.3d at 1236. The plaintiff supported these alleged customs and policies with a "strikingly similar" incident concerning another pretrial detainee that had occurred one month prior to the incident at issue in the *Harper* litigation. *Id.* at 1236-37. Because the complaint in the *Harper* litigation provided significant factual detail about the incident involving the decedent, factual

details about a similar incident that had occurred one month earlier, and "specific allegations regarding the customs or policies put in place by the supervisors," the Eleventh Circuit concluded that the plaintiff had alleged a sufficient claim based upon supervisory liability. *Id.* at 1237. But the allegations in this case are not similar.

Here, Plaintiff has not alleged sufficient facts to demonstrate any custom or policy of deliberate indifference towards inmates suffering from withdrawal symptoms at the Shelby County Jail or, more generally, deliberate indifference towards inmates who require outside treatment. While Plaintiff has alleged specific customs or policies similar to those presented in the *Harper* litigation, (*see* Doc. # 33 at ¶¶ 62, 64, 67-68), he has not alleged either (1) consistent and widespread conduct under the custom or policy or (2) a strikingly similar incident at the jail. As was the case in *Bell*, this court cannot plausibly infer a custom or policy of denying medical treatment from the five isolated incidents that occurred at the jail between 2004 and 2013. (Doc. # 33 at ¶ 72). *See Bell*, 2013 WL 5566269, at * 8. Simply put, these incidents, standing alone, do not demonstrate a custom or policy of deliberate indifference, just as they do not demonstrate a history of widespread abuse.

As a general rule, a plaintiff may not base a custom or policy claim of liability for supervisors on a single prior incident. *See Rivas v. Freeman*, 940 F.2d 1491, 1495-96 (11th Cir. 1991) (affirming a district court's finding that a sheriff was liable under Section 1983 for his official policy or custom because the plaintiff had presented evidence of numerous similar incidents); *Depew*, 787 F.2d at 1499 ("To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice."). But, even if that were not true, this case is nothing like the exception found in *Harper v. Lawrence County, Alabama*, 592 F.3d 1227 (11th Cir. 2010).

Here, Plaintiff has failed to present a "strikingly similar" incident that occurred in close temporal proximity to the alleged deliberate indifference towards Hays's medical needs. Four of the five specific incidents described in the Second Amended Complaint do not involve treatment provided for substance abuse withdrawal issues. (*See* Doc. # 33 at ¶ 72). The fifth incident, which concerned Allred, occurred nearly three years prior to Hays's custody in the jail. (*See id.* at ¶¶ 34, 59, 72). Thus, the Allred incident is simply not close enough in time to that alleged here to constitute a "strikingly similar" incident that may, by itself, support an alleged custom or policy claim by a plaintiff against a supervisor in his or her individual capacity under Section 1983. *See Harper*, 592 F.3d at 1236-37 (focusing on the temporal proximity between incidents that occurred *one month* apart as evidence that the supervisory defendants should have been on notice about their subordinates' conduct).[6]

Therefore, for these reasons, Plaintiff's Section 1983 claims against Curry and Fondren are due to be dismissed for failure to state a claim.

---

[6] The *Harper* decision is an interesting one. On the one hand, there may be some question as to whether the *Harper* panel's decision violates the prior panel precedent rule. *United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993) ("[I]t is the firmly established rule of [the Eleventh] Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court."). *Harper* inferred a custom-or-policy Section 1983 claim against supervisors in their individual capacities based on a single prior incident of unconstitutional conduct; however, cases decided in this Circuit prior to *Harper* had consistently held that such a claim could not be based on a single incident. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007) ("Demonstrating a policy or custom requires 'show[ing] a persistent and wide-spread practice.'" (quoting *Depew*, 787 F.2d at 1499)); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1294 (11th Cir. 2004) ("Our precedents are clear that, for constitutional violations to be sufficiently widespread for a governmental supervisor to be held liable, they need to occur with frequency." (internal quotation omitted)); *Depew*, 787 F.2d at 1499. Despite this observation, the court is not prepared to say that *Harper* violated the prior panel precedent rule. *See Hogan*, 986 F.2d at 1369. Rather, given this discrepancy between *Harper* and previously decided cases in this Circuit establishing a higher standard for plausibly showing a supervisor's custom or policy, the court concludes that *Harper*'s holding must be carefully limited to its factual context. *Cf. Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1031 (11th Cir. 2003) ("[T]he holdings of a prior decision can reach only as far as the facts and circumstances presented to the court in the case which produced that decision."). And, as discussed above, this case is factually distinct from the *Harper* case because Plaintiff has not alleged that a strikingly similar incident occurred in very close temporal proximity to the Hays incident.

## C. Alternatively, Defendants Curry and Fondren Are Entitled to Qualified Immunity

Defendants Curry and Fondren have also raised the defense of qualified immunity. (Docs. # 36 at 1, 37 at 1). Qualified immunity "completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez*, 325 F.3d at 1233 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Because the court has found that Plaintiff's Section 1983 claims against Curry and Fondren for supervisory liability do not state a claim, it follows that Plaintiff has not established the first necessary element to respond to Defendants' qualified immunity affirmative defense.[7] Simply stated, Plaintiff has not shown that *Curry* and/or *Fondren* violated Hays's constitutional rights.

Also, Plaintiff has failed to present sufficient factual allegations for the court to plausibly infer that Curry or Fondren violated Hays's clearly established Fourteenth Amendment rights by enacting a policy or custom or by not responding to a history of widespread abuse. As an initial matter, Curry's and Fondren's alleged policy or custom of delaying access to outside medical care fails to present a violation of a clearly established constitutional right because it relies on a violation of an abstract and generalized legal proposition, rather than a particularized policy or custom of deliberately indifferent medical care in a specific factual context.[8] *Youmans v.*

---

[7] After a defendant who has asserted a qualified immunity defense shows that he was acting within his discretionary authority, a plaintiff must establish two elements in order to show that the defendant is not entitled to qualified immunity: (1) the defendant's conduct violated a statutory or constitutional right; and (2) the violation of plaintiff's statutory or constitutional right was "clearly established." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136-37 (11th Cir. 2007).

[8] For similar reasons, Curry and Fondren's failure to respond to an alleged "widespread history" of "cost control" does not allege a violation of a clearly established constitutional right, since Plaintiff has provided no case law prohibiting generalized limitations on transporting prisoners to outside medical providers for non-emergency medical care. *Cf. Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) ("The best response to a serious medical need is not required by federal law in these cases.").

*Gagnon*, 626 F.3d 557, 563-64 (11th Cir. 2010) (stating that a plaintiff must allege a violation of "[m]ore than a general legal proposition" unless it is "obvious that the general rule applies to the specific situation in question," and asserting that deliberate indifference claims "are very fact specific"). Likewise, Curry's and Fondren's alleged policy or custom of allowing inmates who are physically dependent on opiates and benzodiazepines "to suffer, without any medical support, for extended periods of time" does not allege a violation of clearly established law regarding deliberate indifference towards pretrial detainees. (Doc. # 33 at ¶¶ 23-28). To be sure, the Eleventh Circuit has held that "policies or customs of delayed investigation into and treatment of alcohol withdrawal would be unlawful." *Harper*, 592 F.3d at 1237. However, the Second Amended Complaint has not alleged that Curry or Fondren created a policy or custom of providing *delayed* investigation or treatment; rather, it has asserted that Curry and Fondren instituted a policy of taking inmates to the medical unit for monitoring and delaying their admission to an emergency room.[9] (*See* Doc. # 33 at ¶ 24). Plaintiff has not provided, and the court has not found, clearly established law from the Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court that would have put Curry or Fondren on notice that there was a need to create a policy directing their subordinates that a prisoner suffering from opiate withdrawal had to receive outside medical care for opiate withdrawal at a specific point in time.

Thus, as an alternative ground for dismissal, Curry and Fondren are entitled to qualified immunity on Plaintiff's claims. *See Gonzalez*, 325 F.3d at 1233 (noting that because qualified

---

[9] *Harper* cites two cases for its holding that a policy or custom of delayed investigation or treatment of alcohol withdrawal constitutes deliberate indifference: (1) *Lancaster v. Monroe County., Alabama*, 116 F.3d 1419 (11th Cir. 1997), and (2) *Morrison v. Washington County, Alabama*, 700 F.2d 678 (11th Cir. 1983). Both cases are distinguishable from this case at a basic factual level because the decedents in those cases had suffered from delirium terems, a severe form of alcohol withdrawal, and the supervisors sued in those cases had been personally informed about the inmate's possible need for medical care prior to their deaths. *See Lancaster*, 116 F.3d at 1421-22 & n. 4 (asserting that a sheriff was informed of an inmate's prior seizure and the possibility of another seizure if the inmate did not receive alcohol or medication); *Morrison*, 700 F.2d at 681 (noting that a sheriff was informed that an inmate was a patient coming from a hospital prior to the inmate's arrest).

immunity is a defense to standing trial and facing other burdens of litigation, "[i]t is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right'") (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)).

### V.     Conclusion

For the reasons discussed above, Curry's and Fondren's Motions to Dismiss (Docs. # 36, 37) Plaintiff's Second Amended Complaint (Doc. # 33) are due to be granted. An order consistent with this opinion will be entered.

**DONE** and **ORDERED** this October 28, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE