FILED

2017 Mar-07  PM 02:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY HAYS, as the personal representative of the Estate of Brandon Lee Hays, | } } } } | |
| Plaintiff, | } } | Case No.:  2:16-cv-00384-RDP |
| v. | } } | |
| CHARLES VERNON SKOOG, et al., | } } | |
| Defendants. | } | |

**<u>MEMORANDUM OPINION</u>**

This case is before the court on Defendant Charles Vernon Skoog's Motion to Dismiss (Doc. # 38).  The parties have fully briefed the motion and have filed supplemental briefs regarding Defendant Skoog's qualified immunity defense.  (Docs. # 44, 52, 64, 66, 67).  After careful review, and for the reasons discussed below, the court concludes that Defendant's motion to dismiss is due to be granted in part and denied in part.

I.      **Procedural History and Factual Allegations**

In his Second Amended Complaint, Plaintiff seeks relief for violations of Brandon Lee Hays's civil rights under 42 U.S.C. § 1983 and for medical malpractice allegedly committed by several Defendants, including Defendant Dr. Skoog.  (Doc. # 33).  Plaintiff claims that Dr. Skoog was a medical director for Prison Healthcare, LLC ("PHC"), a private corporation.  (*Id.* at ¶¶ 4-5).  According to Plaintiff, Defendant Skoog was a final decisionmaker for PHC and established policies and practices for PHC.  (*Id.* at ¶ 5).

The Second Amended Complaint presents three categories of claims against Dr. Skoog. First, Plaintiff claims that Defendant Skoog violated Hays's Fourteenth Amendment rights as a pretrial detainee because he was deliberately indifferent towards Hays's serious medical needs. (*Id.* at ¶ 82). Second, Plaintiff claims that Defendant Skoog, along with other Defendants, established customs or policies that violated Hays's Fourteenth Amendment rights as a pretrial detainee. (*Id.* at ¶ 83). Finally, Plaintiff claims that Defendant Skoog committed medical malpractice, which caused Hays's medical condition to deteriorate and contributed to his death on March 3, 2014. (*Id.* at ¶¶ 85-86).

Skoog has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Doc. # 38). "A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996). Thus, for the purpose of resolving Defendant's motion, the court treats the following facts alleged in the Second Amended Complaint as true.

In February 2014, Brandon Lee Hays was sent to the Shelby County Jail when his bond was revoked due to a positive drug test. (Doc. # 33 at ¶¶ 14-15). Officers at the jail confiscated suboxone film from Hays at booking. (*Id.* at ¶ 16). Moreover, Hays informed jail personnel "that he had a history of serious withdrawal symptoms." (*Id.* at ¶ 18). Nevertheless, Hays did not receive medication, treatment, or monitoring for his withdrawal symptoms. (*Id.* at ¶ 21).

---

[1] Skoog also has filed a notice of supplemental authority that raises additional arguments as to why he is entitled to qualified immunity. (Doc. # 64). Plaintiff has filed a response explaining why Defendant Skoog is not entitled to qualified immunity. (Doc. # 66). These arguments are fully addressed below. Defendant Skoog also preserves any statute of limitations defense permitted by law but presents no argument as to why Plaintiff's claims are barred by any applicable statute of limitations. (Doc. # 38 at 2). Therefore, the court does not address in this opinion whether Plaintiff's claims are barred by any statute of limitations.

Medical personnel at the jail provided Hays no medical treatment for severe withdrawal symptoms from February 27, 2014 through March 1, 2014.  (*Id.* at ¶¶ 34-37).  On March 2, 2014, he was taken to the jail's medical unit at 5:20 a.m. after suffering from seizures.  (*Id.* at ¶¶ 34-37, 39).  Nothing in the Second Amended Complaint indicates that the jail's medical personnel informed Dr. Skoog of Hays's condition before March 2, 2014.  Two nurses, Defendants H. Willard and K. Lovett, informed Dr. Skoog of Hays's medical condition that morning.  (*Id.* at ¶ 45).  They informed him that Hays had suffered from seizures, severe dehydration, weakness, and inability to walk.  (*Id.* at ¶ 46).  Dr. Skoog directed nurses to administer Phenergan to Hays.  (*Id.* at ¶ 44).  Dr. Skoog did not instruct the medical personnel at the Shelby County Jail to transfer Hays to a hospital.  (*Id.* at ¶ 47).

Hays's condition continued to worsen in the early morning hours of March 2nd, even after he took the prescribed medication.  (*See id.* at ¶¶ 51-54).  He was unable to drink a significant amount of fluids that day.  (*Id.* at ¶ 51).  His heart rate remained above 110, and his blood pressure dropped significantly.  (*Id.* at ¶ 53).  Medical personnel at the jail contacted Dr. Skoog again on March 2nd and informed him of Hays's deteriorating condition.  (*Id.* at ¶ 55).  Dr. Skoog did not direct medical personnel at the jail to transfer Hays to a hospital during the second communication.  (*Id.*).  An officer examined Hays at 5:00 a.m. on March 3, 2014 and found that he was unresponsive.  (*Id.* at ¶ 44).  Ultimately, Hays died on March 3, 2014.  (*Id.* at ¶ 59).

## II.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, the complaint must include enough facts "to raise a right to relief above the

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. International Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. Appx. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-

4

pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed.[2]  *Twombly*, 550 U.S. at 570.

## III.    Analysis

Defendant Skoog presents two arguments as to why Plaintiff's claims against him should be dismissed.  Initially, he argues that Plaintiff's Section 1983 claims and medical malpractice claim fail to state a claim for relief.  (Doc. # 38, Memorandum Brief Supporting Defendant Charles Vernon Skoog's Motion to Dismiss ("Memorandum Brief"), at 11-17).  Moreover, he claims that he is entitled to qualified immunity because he entered into a contract with the Shelby County Commission, a public entity, and Plaintiff has only accused him of committing negligent conduct.  (*See* Doc. # 64 at 1-2).  The court addresses each of these arguments below.

### A.    Plaintiff Has Adequately Pled a Deliberate Indifference Claim Against Defendant Skoog Based on His Individual Actions Prior to Hays's Death

Defendant Skoog argues that Plaintiff's complaint fails to present an actionable claim of deliberate indifference.  (Doc. # 38, Memorandum Brief, at 11).  Relying on the jail's medical records, Skoog asserts that he prescribed medication for Hays when informed about Hays's vomiting.  (*Id.* at 11-12).  In a footnote, he indicates that the court should disregard Plaintiff's allegations that he was informed of Hays's seizures, severe dehydration, and inability to walk on March 2, 2014 because those allegations "are not supported by any known facts."  (*Id.* at 11 n. 2).

---

[2]  The court recognizes that the heightened pleading standard formerly applied by the Eleventh Circuit to Section 1983 cases where a defendant could assert qualified immunity no longer applies after *Iqbal*.  *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).

The Eleventh Circuit has "consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference."[3] *Adams v. Poag*, 61 F.3d 1537, 1543-44 (11th Cir. 1995) (citing *Carswell v. Bay Cnty.*, 854 F.2d 454, 457 (11th Cir. 1988), and *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)). However, not every claim of inadequate medical treatment states a cognizable claim under the federal constitution. "Medical treatment [is deliberately indifferent] only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted). To establish that a medical provider or jail official was deliberately indifferent to a detainee's serious medical need, a plaintiff must meet both an objective and a subjective standard of proof. *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999).

With respect to the objective component, a plaintiff is required to show both (1) an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and (2) that the response by the prison official to that need was poor enough to constitute an unnecessary and wanton infliction of pain. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks omitted). Even when treatment is ultimately provided, deliberate indifference may be "inferred from an unexplained delay in treating a known or obvious serious medical condition." *Harris v. Coweta Cnty., Ga.*, 21 F.3d 388, 394 (11th Cir. 1994).

---

[3] Hays was a pretrial detainee at the Shelby County Jail when he died. (*See* Doc. # 33 at ¶ 82). Deliberate indifference claims on behalf of pretrial detainees are brought under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Nevertheless, the same legal standards are applied to deliberate indifference claims brought under either constitutional provision. *Id.*

To establish the subjective component, a plaintiff must establish (1) subjective knowledge of a risk of serious harm, (2) disregard of that risk, and (3) that the conduct committed by the prison official was more than merely negligent. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Additionally, as with any tort-like claim, the plaintiff must show that an injury was caused by the defendant's wrongful conduct. *See Hale v. Tallapoosa Cnty., Ala.*, 50 F.3d 1579, 1582 (11th Cir. 1995). It is not enough to show that the care provided was less than optimal, or that a different course of treatment might have been preferable. The required subjective elements of a deliberate indifference claim ensure that accidental inadequacy, negligent diagnosis or treatment, and even medical malpractice are not actionable under Section 1983. *Taylor*, 221 F.3d at 1258. The requisite standard of mind, deliberate indifference, has been compared to the mental state of criminal recklessness. *See Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). "Ultimately," as the Eleventh Circuit has stated, "there are thus four requirements: an objectively serious need, an objectively insufficient response to that need, a subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258.

As an initial matter, the court cannot review the medical evidence attached to Defendant Skoog's motion under Rule 12(b)(6). (*See* Doc. # 38, Memorandum Brief, at 10 n. 1 (arguing that the court may consider this evidence without converting the motion to a summary judgment motion)). In most cases, a court may not consider anything beyond the face of a complaint and documents that are attached to a complaint when reviewing whether a plaintiff has stated a claim for relief. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). There is a limited exception to this rule. A court may consider a document attached to a party's motion to dismiss if a plaintiff has referred to that document in its complaint, the document is

central to the plaintiff's claim, and the contents of the document are not in dispute.  *Id.*  Here, the medical documents attached to Defendant Skoog's motion are not central to Plaintiff's claims as Plaintiff might be able to prove his claims without referring to the evidence in the medical notes.  *See id.* at 1284-85.  Moreover, Plaintiff has challenged the authenticity of the medical records.  (Doc. # 33 at ¶ 42 (claiming that the jail's medical records "appear to have been altered or recreated in significant aspects")).  *See also Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (holding that a court cannot assume the veracity of documents *attached to a complaint* when reviewing a Rule 12(b)(6) motion if the complaint contests the factual accuracy of those documents).  Therefore, the court cannot accept at this stage of the proceedings that the medical notes provide an accurate or complete picture of Hays's medical care at the Shelby County Jail and cannot consider them in reviewing Defendant Skoog's motion to dismiss.[4]

Plaintiff's Second Amended Complaint presents a plausible deliberate indifference claim against Defendant Skoog.  The complaint alleges that Hays suffered from several objectively serious medical conditions that required some medical treatment, including seizures, severe vomiting, and severe dehydration.  (Doc. # 33 at ¶¶ 36, 39, 44).  It also asserts that on-site medical personnel informed Defendant Skoog of all these serious medical conditions.  (*Id.* at ¶¶ 46, 55).  While Defendant Skoog prescribed Phenergan for Hays to treat his nausea, Defendant Skoog has not indicated that he provided any form of treatment for Hays's seizures.  (*See* Doc. # 38, Memorandum Brief, at 11-12).  Thus, at a minimum, Plaintiff's complaint alleges an objectively insufficient response to Hays's seizures.  *Cf. Harris*, 21 F.3d at 394 (concluding that deliberate indifference can be inferred from an unexplained delay in providing any treatment for a serious medical need).

---

[4]  Likewise, the court cannot consider the evidence attached to Defendant Skoog's supplemental notice in reviewing this motion to dismiss.  Because this case is at an early stage of litigation, the court will not convert Defendant Skoog's motion to dismiss to a summary judgment motion under Rule 56.

The complaint also asserts that Defendant Skoog had subjective knowledge of Hays's serious medical needs after the on-site medical personnel called him.  (Doc. # 33 at ¶¶ 46, 55). Finally, the complaint plausibly alleges that Defendant Skoog acted recklessly when he failed to direct prison medical employees to provide any medical care for Plaintiff's seizures after the seizures had been reported to him.  *Cf. Farmer*, 511 U.S. at 836-37 (indicating that a plaintiff needs to show a state of mind similar to criminal recklessness in order to prove the subjective component of a deliberate indifference claim).

Defendant Skoog argues that he is not liable for deliberate indifference towards Hays's medical condition because he only prescribed medication for Hays over the telephone and did not personally examine Hays.  (Doc. # 38, Memorandum Brief, at 12).  Defendant cites *Adams v. Poag* to support this argument.  61 F.3d 1537 (11th Cir. 1995), *abrogated in part by Richardson v. Knight*, 521 U.S. 399 (1997).  *See Hinson v. Edmond*, 192 F.3d 1342, 1347 n. 5 (11th Cir. 1999) (concluding that *Adams*'s analysis of a private physician's entitlement to qualified immunity was "not controlling in the light of *Richardson*"), *amended*, 205 F.3d 1264 (11th Cir. 2000).  But, *Adams* is distinguishable from the present case.  In *Adams*, the Eleventh Circuit reversed the district court's denial of qualified immunity to a doctor working for a prison medical provider because the doctor had prescribed medication for the decedent's medical condition.  *See id.* at 1544-45 (explaining that the plaintiffs had submitted expert testimony questioning the medication and dosage prescribed by the doctor, but concluding that such a claim sounded in medical malpractice, rather than deliberate indifference).  Here, in contrast, Plaintiff has pled that Dr. Skoog prescribed no medication and no treatment for certain of Hays's serious medical conditions from which he was suffering on the day before his untimely death.

Likewise, the Eleventh Circuit's opinion in *Howell v. Evans* does not foreclose Plaintiff's deliberate indifference claim.  922 F.2d 712 (11th Cir. 1991), *abrogated in part by Richardson*, 521 U.S. 399 (1997).  *See Hinson*, 192 F.3d at 1347 n. 5 (concluding that *Howell*'s analysis of a private physician's entitlement to qualified immunity was "not controlling in the light of *Richardson*").  In *Howell*, the defendant prescribed medication and oxygen treatment for the decedent's asthma condition, which worsened while the doctor was treating him.  922 F.2d at 720-21.  The doctor later left the hospital and did not respond to pages by the nursing staff regarding the decedent.  *Id.* at 721.  The Eleventh Circuit concluded that the defendant was entitled to qualified immunity because the plaintiff failed to present evidence that he had deviated from a clear and objective medical standard.  *Id.* at 721-22 (discussing an affidavit submitted by the plaintiff that provided evidence of malpractice, as opposed to deliberate indifference).  Unlike the doctor in *Howell*, who was not informed of the decedent's deteriorating condition by on-site medical personnel, Plaintiff alleges that Defendant Skoog was informed of Hays's deteriorating condition and failed to direct on-site medical personnel to provide medical treatment in response to it.

For all these reasons, the court concludes that the Second Amended Complaint presents a plausibly pled deliberate indifference claim against Defendant Skoog for his alleged failure to order treatment on March 2, 2014 for any condition other than Hays's vomiting.

**B.     Plaintiff Has Not Plausibly Pled a Section 1983 Deliberate Indifference Claim Against Skoog in His Supervisory Capacity**

In this motion to dismiss, Defendant Skoog contends that Plaintiff has failed to plead an adequate Section 1983 supervisory liability claim.  (Doc. # 38, Memorandum Brief, at 13-15).  Defendant asserts that the Second Amended Complaint is insufficient to charge him with failing to train or supervise his subordinates.  (*Id.* at 13).  Moreover, he insists that the Second Amended

Complaint presents no "flagrant, persistent pattern of violations that would have put Dr. Skoog on notice of the need to correct any deprivation." (*Id.* at 14 (internal citation omitted)). Plaintiff responds that the Section 1983 claim against Defendant Skoog in his supervisory capacity is not due to be dismissed for failing to establish a pattern of similar constitutional violations. (Doc. # 44 at 3 (referring to Plaintiff's response to an earlier motion to dismiss)). The court concludes Defendant has the better argument.

It is axiomatic that supervisors are not responsible for unconstitutional acts by their subordinates on the basis of *respondeat superior* liability or vicarious liability. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Rather, a supervisor is only liable under Section 1983 in an individual capacity if he or she personally participated in unconstitutional conduct or "when there is a causal connection" between his or her actions and an alleged constitutional deprivation. *Id.* "A causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,' . . . or when the supervisor's improper 'custom or policy resulted in deliberate indifference to constitutional rights.'"[5] *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citation and ellipsis omitted).

As the court explained in an earlier opinion (*see* Doc. # 62 at 6-11), the Second Amended Complaint does not plausibly allege (1) a history of widespread unconstitutional conduct by Defendant Skoog's subordinates, (2) a custom or policy of deliberate indifference towards inmates suffering from withdrawal symptoms at the Shelby County Jail, or (3) a custom or policy of deliberate indifference towards inmates who require outside treatment. Plaintiff relies on

---

[5] Plaintiff does not argue that Defendants Skoog is subject to supervisory liability for directing his subordinates to act unlawfully or knowing that they would act unlawfully and failing to stop them.

many of the same customs and policies allegedly instituted by Defendants Chris Curry and Jay Fondren to assert that Defendant Skoog is subject to supervisory liability. (*See* Doc. # 33 at ¶¶ 24-28, 63-64, 66-67). But, the analysis of the supervisory Section 1983 claims against Defendants Curry and Fondren (which the court expressly adopts and incorporates here) applies with equal force to the supervisory claims against Defendant Skoog. (*See* Doc. # 62 at 6-11). In addition, Plaintiff asserts that Defendant Skoog established a policy or custom of ignoring medical complaints by prisoners but provides no other examples of similar incidents. (*See* Doc. # 33 at ¶ 68). Therefore, this conclusory claim is insufficient to present a custom or policy capable of supporting a supervisory Section 1983 claim against Defendant Skoog.

Moreover, to the extent that the Second Amended Complaint raises a failure-to-train claim against Defendant Skoog, that claim is also due to be dismissed. "[A] plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1052 (11th Cir. 2014), quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011). As the court has already explained, Plaintiff has not shown a pattern or history of similar constitutional violations at the Shelby County Jail, so Defendant Skoog could not have been on constructive notice that subordinates were violating inmates' constitutional rights due to a specific deficiency in training.[6] *Cf. id.* at 1053-54 (affirming a district court's grant of summary judgment on a failure-to-train claim due to a lack of evidence of similar constitutional violations).

---

[6] Plaintiff also has failed to identify a specific failure in training procedures that led to the alleged inadequate care that Hays received and Hays's ultimate death.

For these reasons, Plaintiff's Section 1983 claims against Defendant Skoog based on supervisory liability are due to be dismissed for failure to state a claim.

### C.    Plaintiff's Second Amended Complaint Presents a Sufficient Claim for Medical Malpractice

Defendant Skoog contests Plaintiff's medical malpractice claim on several grounds.  He argues that the allegations do not support the claim that he failed to exercise appropriate care after being informed of Plaintiff's vomiting.  (Doc. # 38, Memorandum Brief, at 15-16).  He insists that the standard of care did not require him to personally examine Hays on March 2, 2014 because Hays was being monitored by nursing staff.  (*Id.* at 16).  He further contends that the allegations do not demonstrate a causal connection between his actions or omissions and Hays's death.  (*Id.* at 16-17).  And, in a footnote, he asserts that the medical malpractice claim lacks sufficient specificity, as required by Alabama Code § 6-5-551, because the operative complaint alleges facts in the alternative.  (*Id.* at 16 n. 9).  All of these arguments miss the mark.

Section 6-5-551, which governs the pleading standard for Plaintiff's medical malpractice claim, provides:

> The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts.

Ala. Code § 6-5-551.  The Alabama Supreme Court has concluded that this pleading standard is similar to the heightened pleading requirement contained in Alabama Rule of Civil Procedure 9(b):

> [W]hen a plaintiff files a complaint alleging that a health care provider breached the standard of care owed to the plaintiff, although every element of the cause of action need not be stated with particularity, the plaintiff must give the defendant health care provider fair notice of the allegedly negligent act and must identify the time and place it occurred and the resulting harm. If the complaint affords the defendant health care provider fair notice of these essential elements, the courts

13

> should strive to find that the complaint includes the necessary detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff.

*Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993) (internal quotation omitted). In *Mikkelsen*, the Alabama Supreme Court held that the plaintiff's complaint had provided fair notice of the medical malpractice claim because it outlined the allegedly negligent acts performed by the defendant physician, the date and place of the negligent acts, and "sufficiently alleged that the harm resulting from his negligent act was the accident made the basis of this case, which, it alleged was the proximate or primary cause of the . . . injuries." *Id.* at 1385.

Plaintiff's medical malpractice claim meets the pleading requirements of Section 6-5-551. The Second Amended Complaint presents several distinct actions and omissions allegedly committed by Dr. Skoog on March 2, 2014 and March 3, 2014. (Doc. # 33 at ¶ 85). Defendant Skoog claims that the complaint's allegations do not support a legal conclusion that he violated the standard of care (*see* Doc. # 38, Memorandum Brief, at 15-16), but the standard of care owed by a medical doctor is an issue of fact (proven through expert testimony), not an issue of law. *See, e.g.*, *Giles v. Brookwood Health Servs., Inc.*, 5 So. 3d 533, 549 (Ala. 2008) (explaining that a plaintiff must establish a physician's breach of the standard of care through expert testimony unless certain exceptions apply). Defendant also challenges Plaintiff's failure to identify "any standard of care that requires a prison physician to make multiple checks on a patient already being monitored by a nurse" (Doc. # 38, Memorandum Brief, at 16), but a complaint cannot establish a standard of care under Alabama law. The proper standard of care ordinarily must be established by testimony from a "similarly situated health care provider." Ala. Code § 6-5-548(e); *Holcomb v. Carraway*, 945 So. 2d 1009, 1012 (Ala. 2006). Defendant's argument implies that Plaintiff must establish the relevant standard of care at the pleading stage. Such a

14

requirement, however, would obligate Plaintiff to present expert evidence from a medical practitioner at the pleading stage, a requirement not imposed by Alabama law.  The Second Amended Complaint alleges that specific actions and omissions by Dr. Skoog failed to meet the standard of care.  (Doc. # 33 at ¶ 85).  For now, that is enough.

Similarly, Plaintiff's Second Amended Complaint sufficiently alleges that Dr. Skoog's malpractice caused him harm.  (*Id.* at ¶ 86).  Defendant argues that no causal connection exists between his alleged malpractice and any harm to Plaintiff because the complaint also presents malpractice claims premised upon negligence by on-site nurses.  (Doc. # 38, Memorandum Brief, at 17).  The complaint as properly read, however, presents alternative theories of relief based on the actions and omissions of several actors.  It is well-settled that Alabama law permits inconsistent, alternative, and hypothetical pleadings.  *DRC, Inc. v. Great Am. Ins. Cos.*, 901 So. 2d 710, 714 (Ala. 2004).  Defendant has cited no authority that purports to abrogate this general rule in medical malpractice actions.  While a plaintiff must present "a detailed specification and factual description of each act and omission" that constituted medical malpractice, *see* Ala. Code § 6-5-551, Alabama law does not require a plaintiff to plead a detailed description of how the medical malpractice caused the alleged harm.  For these reasons, Defendant Skoog's motion to dismiss the medical malpractice claim against him is due to be denied.

### D.     Defendant Skoog is Not Entitled to Claim the Defense of Qualified Immunity

In his notice of supplemental authority, Defendant Skoog claims that he is entitled to qualified immunity because he is a private physician who entered into a contract with the Shelby County Commission to provide medical services at the Shelby County Jail.  (Doc. # 64 at 1-2). Skoog relies on the Eleventh Circuit's recent published opinion in *Melton v. Abston*, 841 F.3d 1207 (11th Cir. 2016), which analyzed *de novo* whether a private physician was entitled to

qualified immunity.[7]   (*Id.* at 1).   Plaintiff responds that Dr. Skoog cannot raise a qualified immunity defense because he was a doctor employed by PHC, and Shelby County only entered into a contract with Dr. Skoog to pay for insurance.   (Doc. # 66 at 2).   Plaintiff relies on the Eleventh Circuit's opinion in *Hinson*.   (*Id.* at 2-3).   Although the Eleventh Circuit's prior precedent on this issue is not entirely straightforward, Plaintiff is correct in asserting that Defendant Skoog cannot rely on qualified immunity.

In *Hinson*, the Eleventh Circuit squarely addressed whether a private physician can raise a qualified immunity defense when he or she works for a private, for-profit company who has entered into a contract with a public entity to provide health care services at a jail.  192 F.3d at 1343-44.   The Eleventh Circuit analyzed the issue under a framework discerned from the Supreme Court's opinion in *Richardson*, which held that prison guards working for a private, for-profit company cannot raise qualified immunity defenses.  *See Hinson*, 192 F.3d at 1344-45. The Eleventh Circuit held in *Hinson* that a private physician who worked for a private company could not raise a qualified immunity defense because (a) there was no "firmly rooted" tradition of immunity for such physicians under common law, (b) the public policy rationales for qualified immunity did not justify extending immunity to private physicians working for private companies, and (c) there was no traditional immunity for private prison physicians in Georgia, the state where the *Hinson* case originated.  *Id.* at 1344-47.

Dr. Skoog cannot raise a qualified immunity defense under the Eleventh Circuit's binding authority from *Hinson*.   According to the Second Amended Complaint, Skoog was a physician

---

[7]  The *Melton* opinion also discussed whether a private orthopedist who examined a prisoner was entitled to qualified immunity.  *See* 841 F.3d at 1224-25.  Unlike the physician in that case, the orthopedist had not entered into a contract with the county before providing medical care to the prisoner.  *Id.* at 1224.  The *Melton* panel implied that the orthopedist was entitled to qualified immunity and held that she was entitled to summary judgment under the first prong of qualified immunity because she had not violated the prisoner's constitutional rights.  *Id.* at 1225.  Of course, based on that holding, the orthopedist was entitled to summary judgment on the prisoner's Section 1983 claim before consideration of her qualified immunity defense.

employed by PHC, a private, for-profit company, to provide medical services to prisoners at the Shelby County Jail.  (Doc. # 33 at ¶ 5)  PHC contracted with Shelby County to provide medical services at the Shelby County Jail.  (*Id.* at ¶ 4).  *Hinson*'s holding plainly prevents Dr. Skoog from moving for qualified immunity.

The Eleventh Circuit's *Melton* opinion does not direct a different conclusion.  As an initial matter, the physician whose qualified immunity defense the *Melton* panel considered contracted directly with a public government to provide medical services at a jail.  *See Melton*, 841 F.3d at 1215 (explaining that the doctor was "a physician contracted to treat inmates at Pickens County Jail").  In contrast, Defendant Skoog provided medical services to prisoners on behalf of PHC to fulfill its contract with Shelby County.  Additionally, the *Melton* opinion provides no explanation as to why private prison physicians are entitled to raise a qualified immunity defense.  *See id.* at 1220-21 (discussing the principles of qualified immunity).  Nor does the *Melton* opinion discuss or reference the Eleventh Circuit's prior precedent on the issue. That is, inexplicably, the *Melton* panel evaluated whether the physician in that case was entitled to qualified immunity without acknowledging *Hinson* (or addressing the threshold question of whether a private doctor may even assert qualified immunity).  Indeed, nothing in the opinion even hints that there is case law indicating a privately employed prison physician is ineligible to assert a qualified immunity defense.  *Hinson*, 192 F.3d at 1347.  To the extent *Melton* implicitly suggests that a private physician working at a jail may raise a qualified immunity defense, it is squarely inconsistent with a prior panel decision of this circuit.  In such an instance, the court is obligated to follow *Hinson*'s holding that the private physician cannot raise qualified immunity because *Hinson* was decided before *Melton*.[8]  *See World Holdings, LLC, v. Fed. Republic of*

---

[8] To be sure, *Hinson* itself was not an impermissible departure from prior precedent.  The *Hinson* opinion recognized that the Eleventh Circuit had granted some private prison health care providers qualified immunity in

*Germany*, 701 F.3d 641, 650 (11th Cir. 2012) ("Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court.").

## IV.    Conclusion

For the reasons discussed above, Defendant Skoog's motion to dismiss (Doc. # 38) is due to be granted in part and denied in part.  An order consistent with this opinion will be entered.

**DONE** and **ORDERED** this March 7, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

cases decided before the Supreme Court issued *Richardson*.  *See Hinson*, 192 F.3d at 1347 n. 5 (citing *Adams* and *Howell*).  It concluded, however, that *Adams* and *Howell* were "not controlling in the light of *Richardson*." *Id.* Based on this footnote from *Hinson*, the court concludes that *Richardson* abrogated pre-1997 Eleventh Circuit precedent -- such as *Adams* and *Howell* -- that permitted prison physicians working for private companies to assert qualified immunity as a defense.